UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| KENCO GROUP, INC. *et al.*, | ) | |
| | ) | |
| Petitioner/Counter-Defendant, | ) | 1:20-CV-00129-DCLC-CHS |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES KENNEDY, III, | ) | |
| | ) | |
| Respondent/Counter-Claimant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This case concerns the judicial confirmation of an arbitration award. In 2015, the parties settled a prior dispute and agreed that any further disputes concerning compliance with the settlement agreement would be resolved by mandatory arbitration. When a dispute arose, the parties submitted the case to arbitration. After a five-day trial, the arbitrator found in favor of James Kennedy, III. Disagreeing with that award, Petitioners asked this Court to vacate the arbitration award, claiming the arbitrator exceeded her authority and failed to conduct the arbitration in conformity with the contract and controlling law. Because Petitioners have not shown any basis on which the Court should vacate the arbitration award, Kennedy, III's Motion to Confirm Arbitration Award [Doc. 71] is **GRANTED**.

## I.    BACKGROUND

In 1950, James Kennedy, Jr. founded Kenco Group, Inc., a Tennessee corporation that provides logistics services to third parties. [Doc. 46, ¶¶ 1, 17]. Over the years, the ownership of Kenco remained in the Kennedy family [*Id.*, ¶ 18]. In 2010, Kennedy Jr.'s son, Kennedy, III took over as Kenco's Chief Executive Officer ("CEO") [*Id.*, ¶ 21]. But when other family members

felt his job performance was lackluster, Jane Kennedy Greene, one of Kennedy Jr.'s daughters, challenged Kennedy, III's leadership and eventually ousted him from the CEO position, taking over as Kenco's CEO and Chairwoman of the Board of Directors [*Id.*, ¶ 23]. In response to his ouster, Kennedy, III sued Greene and another of Kenco's directors, Shelia Crane, for wrongful termination of his employment [*Id.*, ¶ 36]. The parties later entered into a Settlement Agreement in May 2015.

## A.    The 2015 Settlement Agreement

As part of the 2015 Settlement Agreement, Kenco paid Kennedy, III $23 million for his ownership interest in Kenco, with a mutual agreement that the parties—including Greene and Crane—would not disparage each other for the next three years [Docs. 46, ¶ 37; 71-1, pg. 13, § 7]. A breach of the non-disparagement provision would result in the disparaged party receiving $250,000.00 in liquidated damages and the opportunity to prove actual damages above that [Doc. 71-1, pg. 13, § 7, ¶ 7.1]. Kenco withheld, with Kennedy, III's acquiesce, $250,000.00 from the purchase price of Kennedy, III's shares ("Holdback Provision") to ensure that he complied with this provision [*Id.*, pgs. 7-8, § 2, ¶ 2.4]. If, after the three-year period, Kennedy, III had not disparaged Kenco or its officers, Kenco would pay the remaining $250,000.00 [*Id.*]. Any disputes regarding compliance with this provision would be resolved by mandatory arbitration before the American Arbitration Association ("AAA")[1] [*Id.*, pg. 13, § 7, ¶ 7.3].

---

[1]    The Settlement Agreement provided that:

In the event of a dispute between the parties over a breach of their non-disparagement obligations in this <u>Section 7</u>, the parties expressly agree that:

(a) Such dispute shall be resolved through an arbitration proceeding before the American Arbitration Association in Atlanta, GA. The arbitration proceeding shall be before a single arbitrator appointed under the AAA Rules of Complex Commercial Arbitration.

2

On May 16, 2018, Petitioners advised Kennedy, III that he forfeited the $250,000.00 because they believed he disparaged each of them during the three year period [Doc. 46, ¶ 10]. Kennedy, III denied their allegations and counterclaimed they disparaged him, claiming that he was entitled to the remaining balance owed to him and liquidated damages in the amount of $250,000.00 [*Id.*]. The parties submitted their dispute to arbitration.

**B.      The Arbitration**

Erika C. Birg ("the Arbitrator") was appointed to resolve the parties dispute under the rules of the AAA. The Settlement Agreement allowed each party discovery rights as provided for by the Tennessee Rules of Civil Procedure. And the Arbitrator agreed to issue any subpoenas requested by the parties, setting January 25, 2019, as the deadline to make those requests [Docs. 71-1, pgs. 22, ¶ 8(a), 29-32]. Discovery disputes had to be raised by February 12, 2019, and discovery had to be completed by March 15, 2019 [Doc. 71-1, pg. 32]. The Arbitrator warned the parties that she would not continue the trial based on discovery disputes or unresolved motions to compel [*Id.*, pg. 22, ¶ 8]. In January 2020, she presided over a five-day trial, and in April 2020, ruled, in part, in favor of Kennedy, III [Doc. 46, ¶ 13; Doc. 71-1, pgs. 34-69].

She began her legal analysis noting that whether a party disparaged the other would be determined by the law of "defamation under Tennessee law." [Doc. 71-1, pg. 36]. She then

--------------------------------

> (b)  Each party shall have discovery rights as provided by the Tennessee Rules of Civil Procedure.
>
> (c)  The arbitrator must assess arbitration and arbitrator fees and expenses, as well as attorney's fees and costs, against the non-prevailing party in the arbitration.

[Doc. 71-1, pg. 13, § 7, ¶ 7.3].

reviewed each claim made by each party and set forth specific findings of fact and conclusions of law with regard to each [*Id.*, pgs. 38-59].

1. **Kenco's claims against Kennedy, III**

Kenco claimed Kennedy, III disparaged it by stating that: (1) Kenco experienced a "rocky road" and an "erosion" of its business under Greene's leadership; (2) Kenco provided little or no information to its shareholders; (3) Kenco was for sale through a private equity firm; (4) Kenco hired CEO Denis Reilly as a private equity "guy" to sell the company; and (5) Kenco's executive committee convinced Kennedy Jr. that "Kennedy III and his sons were plotting against him." [*Id.*, pg. 38].

*Claim One.* As to Kenco's first claim, the Arbitrator found that Kennedy, III's description that Kenco experienced a "rocky road" and some "erosion" of its business was based on his knowledge that Kenco lost some of its business accounts and that "it was not all good news." [*Id.*, pgs. 39-40]. She found that Greene also told her father that Kenco was in bad shape when she came on board [*Id.*, pg. 39]. She noted that Kenco did not introduce any of its financial statements to counter Kennedy, III's claims but only offered Crane's testimony that Kenco's profits had "almost tripled." [*Id.*]. Considering all the evidence, or lack thereof, the Arbitrator found Kennedy, III's statements were not defamatory because "the time frames about which the parties were testifying were different." [*Id.*, pg. 40].

*Claim Two.* Kenco next claimed that Kennedy, III disparaged it by stating in an email that Kenco provided "little or no information to its shareholders." The Arbitrator noted that Crane testified about what was provided at shareholder meetings but failed to state how frequently these meetings occurred or whether "the practices at the shareholder's meeting began after the date of the email [containing Kennedy, III's statement]." [*Id.*, pg. 41]. She also noted that Kenco is a

4

private company, which meant "it [was] hard to assess how this statement . . . could be damaging or in the category of defamatory." [*Id.*].

*Claim Three.* Kenco asserted that Kennedy, III stated Kenco was for sale. In resolving this claim, the Arbitrator made a credibility judgment in which she credited Kennedy, III's testimony that he had learned Kenco may be for sale from Ira Starr and that Kennedy, III advised another individual, who repeated the rumor [*Id.*, pgs. 41-42]. Greene testified that that was not how it happened. She claimed Kennedy, III told Starr about the potential sale and that Starr then informed Kenco's new CEO [*Id.*]. The Arbitrator noted that Kenco's new CEO did not testify and that Kennedy, III was the only person present who had firsthand knowledge [*Id.*]. Even after resolving the credibility issue, she concluded that, given the context, the statement was not defamatory [*Id.*].

At this point in her decision, the Arbitrator addressed Petitioners' allegations that Kennedy, III destroyed evidence and refused to produce documents [*Id.*, pg. 41 n.5]. The Arbitrator found that Petitioners failed to raise their discovery issues within the timeframe outlined in the scheduling orders [*Id.*]. She found that "[b]ecause [Petitioners] did not properly raise those issues during discovery or in the Amended Issues to be Tried, [she] declined to find in favor of [Petitioners] on those grounds." [*Id.*].

*Claim Four.* Kenco claimed that Kennedy, III stated Kenco hired CEO Denis Reilly because he was "a private equity guy to sell the Company." She found that Kenco failed to show any proof Kennedy, III actually said that [*Id.*, pg. 42]. Thus, she dismissed this claim.

*Claim Five.* Kenco's fifth claim involved Kennedy, III's allegations about a plot against Kennedy, Jr. The Arbitrator noted Kenco placed armed guards at Kennedy, Jr.'s home and installed cameras. She found that these kinds of protective measures, at a minimum, demonstrated

that Kennedy, III's claim was not knowingly false or made with reckless disregard for the truth [*Id.*, pgs. 42-43].

While not a claim, the Arbitrator then addressed Kenco's argument that it could raise a theory of defamation by implication to permit it to recover for Kennedy, III's disparagement of Greene and Crane [*Id.*, pg. 43]. The Arbitrator dismissed that argument because Kenco had not raised it previously and, in any event, Kenco cited no Tennessee law in support of it [*Id.*].

### 2. Greene's claims against Kennedy, III

The Arbitrator next addressed Greene's claims against Kennedy, III. Greene claimed that Kennedy, III disparaged her in 13 different ways: (1) he described her as untruthful; (2) he accused her of being untrustworthy; (3) he stated she had a conflict of interest; (4) he called for her removal as a fiduciary; (5) he accused her of engaging in "cyber shenanigans"; (6) he stated she planted video equipment; (7) he accused her of having him fired by telling their father that he was a "bad and selfish son"; (8) he labeled her as "just a housewife from Dallas, who had no management experience, and [who's] only claim to fame [was] an MBA in 1982"; (9) he accused her of chartering private jets at company expense; (10) he stated she was guilty of stockholder abuse; (11) he claimed it was her idea to take control of Kenco to make it a woman-owned business; (12) he asserted that she "had done some pretty bad things and would profit from it"; and (13) he claimed she had nothing to do with operating the company [*Id.*, pg. 44].

*Claim One.* Greene first claimed that Kennedy, III accused her of being untruthful. Kennedy, III admitted he described Greene in this way but that he was only repeating what his father said about her [*Id.*, pgs. 45-46]. The Arbitrator found his explanation credible, and Greene did not challenge his explanation. In fact, Greene admitted that she had no evidence that Kennedy, III actually said she was untruthful [*Id.*].

6

*Claim Two.* Greene next claimed that Kennedy, III said she was untrustworthy. The Arbitrator found that Greene admitted that she had no evidence that Kennedy, III had described her in this manner [*Id.*, pg. 46].

*Claim Three.* Greene asserted that Kennedy, III accused her of having a conflict of interest. The Arbitrator determined that Greene failed to introduce evidence that showed the statement was defamatory [*Id.*].

*Claim Four.* Greene claimed that Kennedy, III called for her removal as a fiduciary. The Arbitrator found that Greene had not shown that Kennedy, III published that statement [*Id.*].

*Claim Five.* Greene alleged that Kennedy, III accused her of engaging in "cyber shenanigans." The Arbitrator noted that Crane admitted she retrieved emails from Kennedy, III's email account and that, in any event, it was not clear Kennedy, III was referring to Greene in that description [*Id.*, pgs. 46-47]. The Arbitrator also concluded that the term "shenanigans" was not defamatory [*Id.*].

*Claim Six.* Greene next claimed that Kennedy, III accused her of installing video equipment. The Arbitrator determined that the statement was true because Greene admitted that she was aware cameras were installed and monitored by Kenco employees [*Id.*, pg. 47].

*Claim Seven.* Greene claimed that Kennedy, III accused Greene of telling their father that Kennedy, III was a "very bad and selfish son." The Arbitrator concluded that Greene had, in fact, told her father that "Jim III is going to do some bad things, Dad, and we have to prepare . . . ." The Arbitrator found the evidence substantiated Kennedy, III's claim that Greene had made that statement [*Id.*, pg. 48].

*Claim Eight.* Greene asserted that Kennedy, III described her as "just a housewife" with an MBA degree. The Arbitrator found those statements to be true. She was a housewife, and she

7

had an MBA degree. Although Greene claimed the statements were demeaning, the Arbitrator found they were not defamatory [*Id.*, pg. 48-49].

*Claim Nine.* Greene alleged that Kennedy, III accused her of using private jets to travel on corporate business. The Arbitrator that statement was not defamatory [*Id.*, pg. 49]. She noted executives do it consistently.

*Claim Ten.* Greene claimed that Kennedy, III accused her of shareholder abuse. The Arbitrator considered the context of that statement and found that Kennedy, III's statements concerned a contract drafted by Greg Willett [*Id.*, pgs. 49-50]. The Arbitrator found Kennedy, III's statements about that contract were an opinion and not a false statement about Greene [*Id.*].

*Claim Eleven.* Greene asserted that Kennedy, III claimed it was Greene's idea to take control of Kenco. The Arbitrator determined that Kennedy, III never claimed that it was Greene's idea to take control of Kenco—but the statement was about others having that idea [*Id.*]. The Arbitrator concluded that it was unclear how that statement could be defamatory, in any event [*Id.*].

*Claim Twelve.* Greene claimed that Kennedy, III accused her of having done "some pretty bad things and would profit from it." The Arbitrator noted that the statement suggested the existence of other bad facts [*Id.*, pgs. 50-51]. The Arbitrator found this to be opinion testimony based on her examination of the statement's context, citing issues surrounding Kennedy Jr.'s Trusts, the video cameras and armed guards installed at his residence, recorded statements Greene made to her father, and her control of the company [*Id.*]. The Arbitrator, relying on Tennessee law, concluded that Kennedy, III made that statement without knowledge of its falsity or in reckless disregard of its truth [*Id.*].

8

*Claim Thirteen.*  Lastly, Greene claimed that Kennedy, III alleged that Greene had nothing to do with operating the company.  The Arbitrator found that, when Kennedy, III asserted that Greene had nothing to do with operating the company, Reilly was the CEO and Greene was the Chairwoman of the Board of Directors [*Id.*, pg. 51].  The Arbitrator concluded that the statement was opinion, not fact [*Id.*].

### 3.    Crane's claims against Kennedy, III

The Arbitrator next discussed Crane's claims against Kennedy, III.  Crane accused Kennedy, III of making many of the same statements he allegedly made about Greene [*Id.*, pg. 52].  Specifically, Crane claimed that Kennedy, III: (1) described her as untruthful; (2) called her untrustworthy; (3) accused her of a conflict of interest; (4) called for her removal as a fiduciary; (5) asserted she engaged in "cyber shenanigans"; (6) accused her of planting video equipment; (7) labeled her as "just a former accounts payable clerk"; (8) asserted she had done some pretty bad things and would profit from them; (9) accused her of conspiring to have him fired; (10) stated she engaged in shady dealings; and (11) stated she had nothing to do with operating the company [*Id.*].

*Claim One.*  Crane first claimed that Kennedy, III described her as untruthful.  The Arbitrator determined that Kennedy, III had not made that statement with knowledge of its falsity or with reckless disregard for its truth [*Id.*, pg. 53].

*Claim Two.*  The Arbitrator similarly found that Kennedy, III had not accused Crane of being untrustworthy with knowledge of its falsity or with reckless disregard for the truth [*Id.*].

*Claim Three.*  Crane next claimed that Kennedy, III alleged that she had a conflict of interest.  The Arbitrator determined that Kennedy, III's statement was not false or republished [*Id.*, pg. 54].

*Claim Four.* Crane asserted that Kennedy, III stated she should be removed as a fiduciary for his father. The Arbitrator reasoned that statement was not defamatory because it did not subject Crane to ridicule or disgrace [*Id.*, pgs. 54-55].

*Claim Five.* The Arbitrator found that Kennedy, III's assertion that Crane engaged in "cyber shenanigans" was not defamatory because "shenanigans" is a broad term that suggested "horseplay" rather than foul play [*Id.*, pg. 55].

*Claim Six.* The Arbitrator concluded that Kennedy, III's accusation that Crane planted video equipment was true and not made with knowledge of its falsity or reckless disregard for its truth [*Id.*, pgs. 55-56].

*Claim Seven.* The Arbitrator determined that Kennedy, III's characterization of Crane as "just a former accounts payable clerk" was not defamatory because "[t]here is no disgrace [in] starting from the ground and working your way up." [*Id.*, pg. 56].

*Claim Eight.* Crane next claimed that Kennedy, III alleged Crane had done some pretty bad things and would profit from them. The Arbitrator reasoned that Kennedy, III's accusation was not made with knowledge of its falsity or with reckless disregard for its truth because that accusation was made in the context of issues regarding Kennedy, Jr.'s Trusts, planted video cameras, and Crane's own promotions under Greene's leadership [*Id.*].

*Claim Nine.* Crane asserted that Kennedy, III conspired to have her fired. The Arbitrator determined that Crane had not proven Kennedy, III had made that statement "let alone made with knowledge of its falsity or reckless disregard for its truth." [*Id.*, pg. 57].

*Claim Ten.* Crane contended that Kennedy, III said Crane engaged in shady dealings. The Arbitrator determined that Crane had not shown that Kennedy, III made the statement and that it was "too convoluted to be twisted into a defamatory statement." [*Id.*].

10

*Claim Eleven.*  Lastly, Crane claimed that Kennedy, III stated Crane had nothing to do with operating the company.  The Arbitrator found that Kennedy, III's statement was opinion and did not suggest "undisclosed defamatory facts."  [*Id.*, pg. 58].  As an alternative finding, the Arbitrator also found Crane had not made a claim for disparagement by the end of the Holdback period, which would disqualify her from recovering in any event [*Id.*, pgs. 58-59].

### 4.    Kennedy, III's claims against Petitioners

Next, the Arbitrator addressed Kennedy, III's claims against Petitioners.  Kennedy, III claimed that Greene: (1) stated he was crooked; (2) accused him of spreading lies; (3) stated Kenco was a mess under his term as CEO; (4) labeled him as a bad leader; (5) charged he was going to do some bad things; (6) asserted that he should be shot; (7) accused him of turning her sisters and father against her; (8) stated that he made up lies; (9) contended that he spread rumors about selling the company; (10) described him as devious; (11) stated that their father fired him; and (12) accused him of being evil [*Id.*, pg. 59].

*Claims One and Ten.*  Kennedy, III first claimed that Greene stated he was "crooked."  The Arbitrator determined that Greene defamed Kennedy, III when she called him "crooked" and stated that he had "devious plans."  [*Id.*, pgs. 60-63].   The Arbitrator concluded that Greene failed to present any evidence to support her claim and that she called Kennedy, III crooked to "impute bad acts to her brother."  [*Id.*, pg. 60].  For Kennedy, III's claim that Greene stated he had devious plans, the Arbitrator reasoned that Greene never described what those specific plans were, suggesting undisclosed defamatory facts [*Id.*, pg. 63].  The Arbitrator determined that the lack of any context or disclosed facts to accompany that accusation made the statement defamatory [*Id.*].

The Arbitrator next addressed Greene's argument that she had a qualified privilege to make those statements.  The Arbitrator found that Greene had actual malice toward Kennedy, III, which

defeated her privilege claim [*Id.*, pg. 64-65]. The Arbitrator cited to the relevant law regarding qualified privilege in her decision but determined that the record did not support Greene's claim of privilege. [*Id.*].

The Arbitrator also denied Greene's argument that Kennedy, III materially breached the Settlement Agreement before she did. [*Id.*, pg. 65]. The Arbitrator determined that Greene had not shown a prior material breach because she failed to show proof of damages, and Greene did not allege which of Kennedy, III's prior acts constituted a breach [*Id.*, pg. 65 n.20]. The Arbitrator further found that the language of the Settlement Agreement did not support Greene's affirmative defense [*Id.*, pg. 65].

*Kennedy, III's claims against Crane.* The Arbitrator found that Kennedy, III had failed to show any evidence that Crane had disparaged him. She denied them in whole [*Id.*, pg. 66].

*The Arbitration Award.* The Arbitrator concluded that Petitioners must release the $250,000.00 funds withheld from the purchase price to Kennedy, III because he did not disparage Petitioners. She also found that Petitioners must pay Kennedy, III $250,000 in liquidated damages because of Greene's disparagement of Kennedy, III [*Id.*, pgs. 66-67]. Lastly, the Arbitrator ordered the parties to submit their fees and costs within three weeks of her award [*Id.*, pg. 68].

## C. Petitioners challenge the arbitration award in federal court

Petitioners filed a Petition to Vacate Arbitration Award [Doc. 46] on April 30, 2021, under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*[2] They asserted that "the Arbitrator exceeded her authority and completely failed to conduct the arbitration in conformance with the contract and controlling law." [Doc. 46, pg. 1]. Petitioners asked the Court to vacate the partial final arbitration

---

[2]    Additionally, Petitioners filed a state court lawsuit related to separate claims that Kennedy, III breached the Settlement Agreement [Doc. 46, ¶ 135].

award and order a new arbitration hearing before a new arbitrator [*Id.*, pg. 95]. The parties subsequently engaged in a lengthy discovery process.

Kennedy, III now moves to confirm the arbitration award [Doc. 71]. He contends that judicial review of arbitration decisions is limited under both federal and Tennessee law [*Id.*, pgs. 5-7]. Kennedy, III argues the Arbitrator did not exceed her authority, followed applicable law in her decision, addressed and analyzed every issue that the parties submitted to her, and did not demonstrate any bias or evident partiality for one side [*Id.*, pgs. 7-13]. He also argues that the award was reasonable and was not a manifest disregard of the law [*Id.*, pgs. 15-16]. Lastly, Kennedy, III asserts that the arbitration award was not procured by fraud [*Id.*, pg. 17].

Petitioners respond, opposing Kennedy, III's motion [Doc. 84]. They argue that the Court must vacate the arbitration award because it was procured by fraud or undue means, the Arbitrator exceeded her authority and demonstrated a manifest disregard for the law, was partial in her decision, and failed to issue a reasoned award [Doc. 84].

## II.    LEGAL STANDARD

The Federal Arbitration Act "expresses a presumption that arbitration awards will be confirmed."[3]  *Nationwide Mut. Ins. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (citing 9 U.S.C § 9). The FAA itself states that a "party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9 (emphasis added). Thus, "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest

---

[3]      The parties appear to dispute whether the Court should apply the Tennessee Uniform Arbitration Act or the FAA, yet both admit that the decision to use one or the other is not "outcome determinative." [Docs. 71, pgs. 5-6; 84, pg. 7]; *In re Dow Corning Corp.*, 778 F.3d 545, 555 (6th Cir. 2015) ("The first imperative of a conflict-of-laws problem is: a conflict. When all roads lead to the same result, there is no conflict to resolve."). Thus, the Court will apply the FAA.

standards of judicial review in all of American jurisprudence." *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016) (quoting *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008)).

"A court may vacate an arbitration award in the following situations: (1) where the award was procured by fraud, (2) where the arbitrators were evidently partial or corrupt, (3) where the arbitrators misbehaved so that a party's rights were prejudiced, or (4) where the arbitrators exceeded their powers or executed them so that a final, definite award was not made." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (citing 9 U.S.C. § 10(a)). The Court may also vacate an award "where the arbitrators have manifestly disregarded the law." *Id.* (citing *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996)). The Court will now examine the circumstances that Petitioners claim support vacating the Arbitrator's award.

## III.  ANALYSIS

### A.  Whether the arbitration award was procured by fraud or undue means.

The FAA allows a court to vacate an arbitration award "where the award was procured by corruption, fraud, or undue means[.]" 9 U.S.C. § 10(a)(1). To vacate an award for fraud or undue means, the movant must show: (1) clear and convincing evidence of fraud; (2) fraud that materially relates to an issue involved in the arbitration; and (3) due diligence that would not have prompted the discovery of the fraud during or prior to the arbitration. *Int'l Brotherhood of Teamsters, Local 519 v. United Parcel Service, Inc.*, 335 F.3d 497, 503 (6th Cir. 2003). Importantly, "[w]hen an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). The Supreme Court has explained that "by agreeing to arbitrate, a party trades the

procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (internal quotations and citations omitted). "Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing." *See National Post Office v. U.S. Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985).

On the first prong, the Sixth Circuit has held that "[b]oth fraud and undue means require proof of intentional misconduct or bad faith." *Bauer v. Carty & Co*., 246 F. App'x 375, 378 (6th Cir. 2007) (citing *Pontiac Trail Medical Clinic, P.C. v. PaineWebber, Inc.*, No. 92-1972, 1993 WL 288301, at *4 (6th Cir. July 29, 1993)). It "clearly connotes behavior that is immoral if not illegal," as opposed to "mere sloppy or overzealous lawyering." *Id.; see also Barcume v. City of Flint*, 132 F.Supp.2d 549, 556 (E.D. Mich. 2001) (finding that undue means requires "some type of bad faith behavior by the winning party").

Petitioners claim Kennedy, III engaged in fraud in the discovery process [Doc. 84, pgs. 9-16]. They assert Kennedy, III not only failed to produce audio recordings but also misrepresented the substance of the recordings he did produce [*Id.*]. Petitioners contend Kennedy, III produced a misleading privilege log and withheld and deleted audio recordings.

The Arbitrator addressed this issue in her opinion. She noted that Petitioners had the opportunity to raise these issues but failed to do so in a timely manner [Doc. 71-1, pg. 41 n.5]. The Arbitrator stated that Petitioners' efforts to raise spoliation and discovery abuse issues were during the arbitration hearing, even though the Arbitrator's three prior scheduling orders made clear that such issues had to be raised *before* the hearing [*Id.*]. Because Petitioners did not timely raise this issue, she declined to address them [*Id.*]. This is not intentional misconduct or use of

15

undue means. Spoliation and discovery abuse issues in litigation generally are resolved prior to trial. In fact, the Arbitrator's scheduling order required as much.

Even if those issues were raised properly, the evidence that Petitioners rely on to show fraud or undue means are transcripts of the withheld recordings and emails turning those recordings over. [*See* Doc. 40]. That evidence does not shed light on any potential bad faith or fraudulent intent on Kennedy, III's part in allegedly withholding evidence because it does nothing more than highlight what Petitioners sought in discovery.[4] The Arbitrator explicitly considered and rejected Petitioners' claims regarding their discovery disputes with Kennedy, III because those claims were untimely made. [Doc. 71-1, pg. 41 n.5]. Moreover, Petitioners admit that Kennedy, III allegedly withheld discovery because of his attorney's "spurious privilege objections." [Doc. 84, pgs. 11-12]. Failure to turn over evidence based on even a meritless objection in a discovery dispute, however, is not clear and convincing evidence of fraud or undue means. *See Pontiac Trail*, 1993 WL 288301 *4-*5 (holding that a party does not exhibit bad faith behavior by withholding evidence based on defective objections and misleading discovery responses).

The second prong, the materiality requirement, demands a connection "between the alleged fraud and the basis for the [arbitrator]'s decision." *Int'l Brotherhood of Teamsters, Local 519*, 335 F.3d at 503 (internal citations removed). If "an arbitrator hears the allegation of fraud and then rests his decision on grounds clearly independent of issues connected to the alleged fraud, the statutory basis for vacatur is absent." *Id.* at 503 (internal citations removed). But if an arbitrator explicitly relies on testimony by a witness and conditions reliance on the integrity of that

---

[4]     The Court notes that Petitioners' citations to Document 2 on the docket to support some of their claims is unhelpful as Document 2 only contains a list of exhibits. Petitioners' citations to Document 2-1 similarly is unhelpful because no such document exists. It is not the Court's job to look for facts to substantiate Petitioners' claims to vacate an arbitration award, particularly when the burden for vacating awards is an onerous one.

16

testimony, clear and convincing evidence of fraud from that witness may be grounds to vacate. *See id.* at 504 (holding that the arbitrator's explicit reliance on a witness' testimony not being "arbitrary" or "biased" meant fraud connected to that witness met the materiality requirement).

Petitioners explain that the withheld evidence shows that Kennedy, III made other defamatory statements that were not considered by the Arbitrator [*Id.*, pgs. 9-16]. That claim undercuts any connection between Kennedy, III's allegedly fraudulent withholding of evidence and the Arbitrator's decision. Petitioners seek to use the withheld evidence for new claims, not to show that the evidence the Arbitrator relied on was fraudulent [*See id.*]. Moreover, the Arbitrator judged the credibility of the parties' testimony at the hearing in reaching her conclusions. This also undercuts Petitioners' fraud claim because the parties' testimony provides an independent basis for her conclusions. [Doc. 71-1, pgs. 34-69]. Thus, Petitioners have failed to establish a connection between the withheld evidence and the Arbitrator's decision.

**B.      Whether the Arbitrator exceeded her authority.**

The FAA allows a court to vacate an arbitration award "where the arbitrators exceeded their powers[.]" 9 U.S.C. § 10(a)(4). Parties seeking to vacate an arbitration award where the arbitrator has allegedly exceeded her powers bear a heavy burden. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). "It is not enough . . . to show that the arbitrator committed an error—or even a serious error." *Id.* (alterations adopted) (internal quotations omitted). "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Id.* (internal quotations omitted). Thus, an arbitrator exceeds her authority when she acts outside the scope of her contractually delegated authority and issues an award that simply reflects her notions of justice rather than drawing its essence from the contract. *Id.* In such

circumstances, the question before the Court is whether the arbitrator "(even arguably) interpreted the parties contract, not whether [s]he got its meaning right or wrong." *Id.*

The Sixth Circuit has stated that "[a] misinterpretation of the contract[] will not, in itself, vitiate the award." *Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 866 (6th Cir. 1990). A court, however, may vacate an award if an arbitrator reaches a question not committed to her by the parties. *Totes Isotoner Corp. v. Int'l. Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 414–15 (6th Cir. 2008).

Petitioners argue that the Arbitrator exceeded her authority when she determined their claims against Kennedy, III were untimely. [Doc. 84, pg. 18]. But the Arbitrator spent the majority of her decision analyzing the merits of the parties' claims and whether they were valid under Tennessee law. Her finding that they were also untimely was an alternative basis for her rejection of Petitioners' claims [*See* Doc. 71-1, pgs. 44, 52, 58]. An independent, alternative finding that does not undermine the Arbitrator's merits analysis is not an instance where the Arbitrator exceeded her authority.

Petitioners next contend that the Arbitrator exceeded her authority by construing undisputed portions of the Settlement Agreement to excuse Kennedy, III's alleged prior material breaches [Doc. 84, pg. 19]. Again, Petitioners' assertion is off the mark. The Arbitrator only interpreted the Settlement Agreement because Greene presented an affirmative defense of prior material breach in her post-hearing brief [*Id.*]. The Arbitrator determined that Greene had not met her burden of proof for showing a prior material breach because she failed to show proof of damages [Doc. 71-1, pg. 65]. The Arbitrator also noted that Greene had not set out the specific language of the Settlement Agreement that she claimed Kennedy, III violated or the specific acts that constituted a material breach. [*Id.*, pg. 65 n.20]. Petitioners, who asserted an affirmative

defense but disagreed with the Arbitrator's interpretation, now believe that the Arbitrator exceeded her authority by doing what they asked of her in the first place. But Petitioners "bargained for the [A]rbitrator's construction of their agreement," and the Court must confirm the award as long as the decision arguably construes the contract, regardless of the Court's view of that interpretation. *Oxford Health Plans LLC*, 569 U.S. at 569. Accordingly, the Arbitrator's allegedly erroneous interpretation of the Settlement Agreement, at Petitioners' invitation, did not exceed her authority.

Petitioners also assert that the Arbitrator exceeded her authority by refusing to consider an adverse inference against Kennedy, III because of his alleged discovery abuses and by failing to apply Tennessee law. [Doc. 84, pg. 21-22]. The Court already has addressed Petitioners' arguments regarding Kennedy, III's alleged discovery abuses. In light of that discussion, the Court finds that the Arbitrator was not required to consider an adverse inference against Kennedy, III because of such abuses and, thus, the Arbitrator could not have exceeded her authority in that regard. As to the Arbitrator's supposed failure to apply Tennessee law, the Arbitrator's decision shows that she did apply relevant Tennessee law in analyzing the merits of the parties' claims. The Arbitrator explained the relevant law in her decision and explicitly cited case law that supported her conclusions. [*See, e.g.*, Doc. 71-1, pgs. 37-38]. Although Petitioners disagree with those conclusions, their disagreements are insufficient to show that the Arbitrator exceeded her authority because it "is not enough . . . to show that the [A]rbitrator committed an error—or even a serious error." *Oxford Health Plans LLC*, 569 U.S. at 569.

C.    **Whether the Arbitrator demonstrated manifest disregard for the law.**

The Sixth Circuit recognizes a fifth ground for vacatur: an arbitrator's manifest disregard of the law. *E.g., Marshall v. SSC Nashville Operating Co.*, 686 F. App'x 348, 353 (6th Cir. 2017) ("We have previously held that despite the Supreme Court's language in Hall Street Associates,

19

the 'manifest disregard' doctrine remains a viable ground for attacking an arbitrator's decision . . . ."). "A mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995) (internal citation omitted). To establish manifest disregard of the law, a movant must show (1) the applicable legal principle is clear and well-settled, and (2) the arbitrator refused to follow that principle. *Id.*

As with Petitioners' preceding arguments, their burden to show that the Arbitrator displayed manifest disregard for the law is onerous. They must do more than point to a "mere error in interpretation or application of the law" and show a clear and well-settled legal principle that the Arbitrator refused to follow. *Id.* Petitioners, however, cannot make such a showing. First, Petitioners assert that the Arbitrator ignored clearly defined law in analyzing their affirmative defense of prior material breach. [Doc. 84, pg. 24]. But their disagreement is with the facts the Arbitrator found—not the law which she applied [*See id.*, pgs. 25-26]. Additionally, Petitioners fail to cite to "clear and well-settled" law that the Arbitrator ignored in her decision. They rely on an unpublished decision from the Texas Court of Appeals and a decision from the Tennessee Court of Appeals that are distinguishable from their facts. [*Id.*, pg. 25]. Petitioners also cite to *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, where the Sixth Circuit affirmed the district court's vacatur of an arbitration award. [*Id.*]; *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 526 (6th Cir. 2012). In that case, the arbitrator failed to address a party's breach of contract claim, which was an issue the arbitrator was called to decide. *Id.* That situation is unlike this case. Here, Petitioners allege the Arbitrator got the facts wrong in making her credibility judgements. That is not the same as failing to address a claim properly submitted for arbitration, as occurred in *Tiburon*.

Next, Petitioners contend that the Arbitrator exhibited a manifest disregard for the law by misapplying the parties' burdens of proof. [*Id.*, pg. 26]. This assertion, however, is another form of Petitioners continuing to attack the Arbitrator's factfinding. They argue that the Arbitrator "consistently accepted Kennedy III's explanations for why he believed what he was saying was true, without questioning whether he was negligent in failing to confirm the truth of his beliefs." [*Id.*]. Setting aside the Court's inability to second guess the Arbitrator's factfinding, Petitioners' contention here is belied by the Arbitrator's decision, which fully analyzes the relevant facts that support her conclusions regarding the parties' claims [Doc. 71-1, pgs. 34-69]. The Arbitrator relied on witness testimony and documentary evidence to reach her decision [*Id.*]. Similarly, Petitioners attack the Arbitrator's factfinding in her conclusion that they had not shown their defamatory statements about Kennedy, III were true [Doc. 84, pg. 27]. The Arbitrator applied Tennessee law in examining Petitioners' affirmative defense of truth but concluded that the record did not support their defense [Doc. 71-1, pgs. 34-69].

Petitioners next argue that the Arbitrator ignored settled law regarding their claim of qualified privilege [Doc. 84, pg. 29]. Once again, Petitioners actually attack the Arbitrator's factfinding and not her application of the law. The Arbitrator cited to the relevant law regarding qualified privilege in her decision but determined that the record did not support Petitioner's claims of privilege [Doc. 71-1, pgs. 64-65]. Petitioners further argue that the Arbitrator ignored legal precedent that held statements similar to ones made by Kennedy, III were defamatory [Doc. 84, pg. 30]. The Arbitrator cited to the governing legal standards regarding defamation in her decision, but she determined that the context of Kennedy, III's statements, and the record as a whole, did not support a finding that his statements were defamatory [Doc. 71-1, pgs. 38-59]. One court's conclusion that a set of statements in one factual context were defamatory does not then render

those statements defamatory in all contexts.

Petitioners argue that the Arbitrator failed to apply well-settled law regarding republication of certain statements by Kennedy, III. [Doc. 84, pg. 32]. That argument, however, obscures the Arbitrator's actual conclusion regarding republication, which was that the issue of republication need not be addressed because the statements were not defamatory in the first instance. [Doc. 71-1, pgs. 38-59]. Petitioners also argue that the Arbitrator ignored the context of Kennedy, III's statements. [Doc. 84, pg. 32]. But the Arbitrator took pains to note the context of each statement that the parties claimed were defamatory, and she relied on the record to support her conclusions for each statement. [Doc. 71-1, pgs. 34-69]. Lastly, Petitioners again raise the Arbitrator's alternative finding that their claims were untimely as evidence of her manifest disregard for the law. [Doc. 84, pg. 33]. But as the Court noted, this was an alternative finding.

**D.    Whether the Arbitrator demonstrated evident partiality.**

The FAA allows a court to vacate an arbitration award "where there was evident partiality or corruption in the arbitrators[.]" 9 U.S.C. § 10(a)(2). A court may vacate an arbitration award on the basis of evident partiality only when "a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989). To warrant relief, "[t]he alleged partiality must be direct, definite, and capable of demonstration, and the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir. 1998). "It is not enough to demonstrate an amorphous institutional predisposition toward the other side[.]" *Uhl*, 512 F.3d at 306-07. A claim of evident partiality requires a party to show: (1) a motive for the alleged bias and (2) "concrete actions in

22

which [the arbitrator] appeared to actually favor" the advantaged party. *Thomas Kinkade Co. v. White*, 711 F.3d 719, 724 (6th Cir. 2013).

Petitioners argue that the Arbitrator showed evident partiality to Kennedy, III by raising new issues *sua sponte* for Petitioners to address in their post-hearing brief, basing her award on issues that Petitioners did not have the opportunity to address, condoning Kennedy, III's alleged destruction of evidence, providing Kennedy, III with greater benefit of the doubt, and permitting Kennedy, III to freely offer evidence and testimony while prohibiting Petitioners from offering some of their own evidence [Doc. 84, pg. 34]. The list of actions that the Arbitrator took that allegedly show her bias toward Kennedy, III simply are decisions that the Arbitrator made in favor of Kennedy, III. Petitioners point to no evidence that shows a motive for the Arbitrator's alleged bias. Indeed, the record does not demonstrate that she had any previous relationship with Kennedy, III before conducting the arbitration hearing. Petitioners' contentions do not show that a "reasonable person would have to conclude that [the] [A]rbitrator was partial" to Kennedy, III because she explained her decisions, cited to relevant law, relied on the record, and addressed each issue raised by the parties. *Apperson*, 879 F.2d at 1358; [Doc. 71-1, pgs. 34-69].

**E.      Whether the Arbitrator failed to issue a reasoned award.**

The FAA does not allow a court to vacate an arbitration award for an arbitrator's alleged failure to issue a reasoned award. *See* 9 U.S.C. § 10(a). Indeed, the Supreme Court has held that "[a]rbitrators have no obligation to the court to give their reasons for an award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960).

Petitioners contend that the Arbitrator failed to consider the merits of their request for an adverse inference against Kennedy, III and failed to address whether Greene's allegedly defamatory statements were true [Doc. 84, pg. 35]. As an initial matter, Petitioners' arguments

here cannot be grounds for vacating the Arbitrator's award under the FAA. *See* 9 U.S.C. § 10(a). Moreover, the Court struggles to see how the Arbitrator failed to issue a reasoned award when she explained her decisions in a 35-page award that discussed the record and relevant law. [Doc. 71-1, pgs. 34-69]. The Court has addressed Petitioners' arguments regarding the Arbitrator's alleged failure to impose an adverse inference against Kennedy, III. Further, for Kennedy, III's claims that the Arbitrator deemed valid, she did address whether Greene's statements were true, noting that Greene failed to "support [her] statement that [] Kennedy III was 'crooked' with evidence" and that Greene failed to disclose facts suggesting that Kennedy, III truly did have "devious plans[.]" [*Id.*, pgs. 59-65].

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, Respondent James Kennedy, III's Motion to Confirm Arbitration Award [Doc. 71] is **GRANTED**, and the arbitration award is **CONFIRMED** and **ADOPTED** as the judgment of the Court. Petitioners' case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

Case 1:20-cv-00129-DCLC-CHS    Document 87    Filed 08/01/22    Page 24 of 24    PageID #: 3111